```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

_____
                                    :
ALFONZO FORNEY,                     :
                                    :
          Petitioner,               :    Civ. No. 13-6239 (NLH)
                                    :
     v.                             :    OPINION
                                    :
UNITED STATES OF AMERICA,           :
                                    :
          Respondent.               :
_____ :

Petitioner Alfonzo Forney, an inmate currently confined at Federal Correctional Institution McKean at Bradford, Pennsylvania, has submitted a motion to vacate, set aside, or correct his sentence pursuant 28 U.S.C. § 2255. For the reasons set forth below, the Court will deny the motion.

## I.  BACKGROUND

In its Opinion on September 30, 2013, the Court of Appeals for the Third Circuit sets forth a detailed procedural history of this case. In relevant part, it states that

> [i]n 2011, Forney pleaded guilty to two counts of uttering counterfeit obligations, in violation of 18 U.S.C. § 472, after he passed counterfeit bills at three Atlantic City casinos, a Walgreens, and a Walmart. He was sentenced in the District of New Jersey to two concurrent terms of 24 months' imprisonment followed by three years of supervised release. Forney was released from prison on April 24, 2012, and was permitted to move to Brooklyn, New York to live with his mother and brother.

About a month later, Forney's brother filed a complaint with the New York City Police Department alleging that Forney had threatened him and was in possession of counterfeit currency. Forney's brother turned over thirty counterfeit $20 bills and a bleached, genuine $1 bill, telling the police that the bills had come from Forney's bedroom. Forney was arrested later that day by Officer Kevin DeLeon. Upon being told that he was being charged with threatening his brother and possessing counterfeit currency, Forney stated: "I wasn't found in possession of United States currency. You didn't find it on my person. My brother is the only [one] who could have said anything." Forney denied that he had recently made any counterfeit bills and claimed that the counterfeit currency given to the police by his brother came from a stash of counterfeit money from his previous case that had never been recovered by the Secret Service or his probation officer. He also stated: "When I have money, I have money and when I don't, I mess around with the counterfeit." Forney was charged in state court with one count of menacing and harassment, and one count of forgery and possession of a forged instrument. The state charges were eventually adjourned in contemplation of dismissal.

Following Forney's arrest, the U.S. Probation Office filed a Violation of Supervised Release Report, alleging that Forney had violated his conditions of release by committing another federal, state, or local crime. The report listed two violations, one for each of the New York charges. Forney contested the violations.

The District Court held a revocation hearing on November 27, 2012. The court heard from Officer DeLeon, who testified to the statements made by Forney after his arrest, and from U.S. Secret Service Agent Michael Thomas, who testified to his analysis of the counterfeit currency recovered in the case. At the conclusion of this testimony, the District Court dismissed the alleged violation for menacing and harassment, concluding that there was insufficient evidence to find that Forney had committed that crime.

> The District Court reached the opposite conclusion, however, with regard to the forgery and possession of a forged instrument charges brought pursuant to N.Y. Penal Law §§ 170.20 and 170.30.  The Court stated that a defendant commits a crime under these statutes "if, with knowledge that the instrument is forged and with intent to defraud, deceive or injure another, he utters or possesses the forged instrument."  The Court had no trouble concluding that Forney's statements to Officer DeLeon established the possession and knowledge elements of the crime, but admitted that it "consider[ed] it a very close call" as to whether Forney had the requisite intent to defraud or deceive.  Nevertheless, the Court found convincing Forney's admission that he "mess[es] around with the counterfeit" when he has no money.  The Court viewed that statement as "a sufficient admission or confession that this stash was used or kept by him for the purpose of using it when he needed it."  Accordingly, the District Court found that Forney had committed a Grade B violation of his supervised release.
>
> As a consequence of his violation and criminal history, Forney's advisory United States Sentencing Guidelines range was 12 to 18 months' imprisonment.  At sentencing, the District Court heard argument from the Government and defense counsel before determining that an 18-month sentence was appropriate.  Because Forney was serving two concurrent terms of supervised release when the violation was committed, however, the District Court then considered whether it should run his sentences consecutively.  Citing the "multiple and flagrant breaches of trust that began almost immediately upon [Forney's] release from imprisonment," the District Court determined that consecutive 18-month sentences should be imposed, for a total term of 36 months' imprisonment.

United States v. Forney, 537 F. App'x 114, 115-116 (3d Cir.

2013) (citations omitted).

Forney timely appealed, arguing that there was insufficient evidence for the district court to conclude that he possessed counterfeit currency with the requisite intent; and (2) that the district court's decision to impose consecutive sentences on him was unreasonable.  On September 30, 2013, the Third Circuit Court of Appeals affirmed the district court's determination.  See Forney, 537 F. App'x 114.

Petitioner then brought this action pursuant to § 2255.  In his Petition, he sets forth four grounds for relief.  As his first ground for relief Petitioner argues, as he did on direct appeal, that there was insufficient evidence for the district court to find that he committed a new crime.  Grounds two and three of the Petition assert that the district court erred in failing to give "preclusive effect to suppression rulings" made by a New York State court judge. (Pet'r's Resp. 5, ECF No. 7).  Finally, Petitioner contends that he received ineffective assistance of counsel.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2255 provides, in pertinent part:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by

>     law, or is otherwise subject to collateral attack, may
>     move the court which imposed the sentence to vacate,
>     set aside or correct the sentence.

28 U.S.C. § 2255(a). See generally U.S. v. Thomas, 713 F.3d 165 (3d Cir. 2013) (detailing the legislative history of § 2255).

A criminal defendant bears the burden of establishing his entitlement to § 2255 relief. See United States v. Davies, 394 F.3d 182, 189 (3d Cir. 2005). Moreover, as a § 2255 motion to vacate is a collateral attack on a sentence, a criminal defendant "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982), cited in U.S. v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014). In addition, a one-year limitations period applies to § 2255 motions. See 28 U.S.C. § 2255(f).

Finally, this Court notes its duty to construe pro se pleadings liberally. See United States v. Otero, 502 F.3d 331, 334 (3d Cir. 2007) (citing Haines v. Kerner, 404 U.S. 519, 520 (1972)).

### III. DISCUSSION

As explained in detail below, the success or failure of each of Petitioner's grounds for relief is inextricably related to the success or failure of another. Thus, the Court will address the grounds for relief not in the order presented in the

Petition, but in an order which resolves each ground most efficiently and clearly.

A. <u>Grounds Two and Three: The District Court Improperly Considered Evidence that the New York State Court had Suppressed</u>

Petitioner asserts in Grounds Two and Three of his Petition that the District Court was prohibited from considering statements and evidence in the Supervised Release Revocation Hearing because the Kings County Criminal Court judge "entered an order suppressing all evidence as violative (and a violation) of [Petitioner's] Fourth Amendment Rights[.]" (Pet. 7, ECF No. 1). Petitioner does not attach a copy of this Order to his submissions. Instead, he includes a transcript of unspecified proceedings in which an unnamed judge (presumably Judge Green) requests additional briefing from counsel on the issue of whether evidence was found in violation of the Fourth Amendment. No ruling on the issues is present in the transcript provided.

1. <u>Procedural Default</u>

As an initial matter, the Court notes that Petitioner did not raise this issue on direct appeal.[1] Failure to do so

---

[1] As noted above, on direct appeal Petitioner challenged: (1) the sufficiency of the evidence; and (2) the reasonableness of the sentence imposed by the district court.

constitutes procedural default. Bousley v. United States, 523 U.S. 614, 621, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "In most circumstances, the doctrine of procedural default prohibits a party from raising an argument on collateral review that was not previously raised at trial or on direct appeal." Neely v. U.S., Civ. No. 09-5831, 2010 WL 2950616 at *3 (D.N.J. July 22, 2010) (citing United States v. Frady, 456 U.S. 152, 167–168, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982) (stating that in general, claims not raised on direct appeal cannot be raised for the first time on collateral review)). "An exception to this rule exists only if a petitioner can demonstrate (1) cause excusing his procedural default, and (2) actual prejudice resulting from the errors of which he complains." Id.; see also Bousley, 523 U.S. 614.

Here, Petitioner does not make a showing of cause or actual prejudice which prevented him from raising this claim on direct appeal. Thus, he has not satisfied the test to set aside his procedural default and his claims regarding the district court's failure to adhere to the New York State judge's rulings can be denied on this basis alone.

However, the Court notes that Petitioner also asserts an Ineffective Assistance of Counsel claim in his § 2255 Petition. This Ineffective Assistance claim, although not explicitly styled as such, could serve as cause to excuse Petitioner's procedural default. Therefore this Court will, in an abundance

of caution, address Petitioner's collateral estoppel and preclusive effect claims on the merits. See Neely, 2010 WL 295616; Abreu v. U.S., Civ. No. 08-4742, 2009 WL 2634640 at *3 (D.N.J. Aug. 26, 2009).

    2. Substantive Discussion

Petitioner argues that the district court should have given preclusive effect to suppression rulings made by a New York State judge. Thus, Petitioner asserts that the sentencing court improperly considered statements and evidence in the Violation of Supervised Release Hearing.

Case law establishes that the Federal Full Faith and Credit Statute, 28 U.S.C. § 1738, obliges federal courts to give the same preclusive effect to a state-court judgment as would the courts of the State rendering the judgment. See, e.g., McDonald v. City of West Branch, Mich., 466 U.S. 284, 104 S.Ct. 1799 (1984); Migra v. Warren City School District Board of Education, 465 U.S. 75, 81, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984); Kremer v. Chemical Construction Corp., 456 U.S. 461, 466, 102 S.Ct. 1883, 1889, 72 L.Ed.2d 262 (1982). In New York State, the formal prerequisites for application of collateral estoppel are "identity of parties; identity of issues; a final and valid prior judgment; and a full and fair opportunity to litigate the prior determination[.]" People v. Aguilera, 82 N.Y.2d 23, 29 623 N.E.2d 519, 522 (N.Y. 1993) (citing People v. Goodman, 69

N.Y.2d 32, 38, 511 N.Y.S.2d 565, 503 N.E.2d 996 (N.Y. 1986) (collecting cases)). Additionally, New York State courts have noted that, for reasons of public policy, the doctrine of collateral estoppel is more sparingly applied in criminal cases than in civil cases. See, e.g., People v. Trucchio, 159 Misc.2d 523, 605 N.Y.S.2d 649 (N.Y. Sup. Ct. 1993); Aguilera, 82 N.Y.2d 23, 623 N.E.2d 519; People v. Acevedo, 69 N.Y.2d 478, 485, 515 N.Y.S.2d 753, 508 N.E.2d 665 (N.Y. 1987); People v. Fagan, 66 N.Y.2d 815, 816, 498 N.Y.S.2d 335, 489 N.E.2d 222 (N.Y. 1985).

Applying these principles to the case presently before this Court, it is clear that collateral estoppel or issue preclusion is unavailable to Petitioner. First, despite Petitioner's arguments to the contrary, the parties in the New York State criminal court case were different from those in Petitioner's Violation of Supervised Release Hearing. Significantly, Respondent United States of America — the party against whom Petitioner wishes to assert collateral estoppel in this case — was not afforded a full and fair opportunity to litigate the issue in the New York State case.

Additionally, Petitioner has not produced any valid, final judgment suppressing the evidence. At the most, Petitioner has submitted transcripts which suggest that a state court judge was contemplating a ruling suppressing the evidence. Although the record is not entirely clear, it is possible that the evidence

in question was obtained illegally and that this contributed to the adjournment of charges against Petitioner. Even assuming this is the case, at the Violation of Supervised Release Hearing counsel for Petitioner explained with respect to the New York State criminal case that, "there is no finding, no judgment of conviction order." (Tr. 62, Nov. 27, 2012, ECF. No. 48). Thus, the dismissal of Petitioner's state criminal proceedings produced no valid and final judgment to which preclusive effect can be given. See McGrath v. Gold, 36 N.Y.2d 406, 330 N.E.2d 35 (N.Y. 1975) (holding that the requisite finality was lacking, in part because the dismissal was based upon a suppression order which was interlocutory in nature); see also Singleton Management, Inc. v. Compere, 243 A.D.2d 213, 673 N.Y.S.2d 381 (N.Y.A.D. 1998) (holding that preclusive effect will only be given to matters "actually litigated and determined" in a prior action).

Petitioner also contends that the law in New York State clearly prohibits the use of evidence in parole revocation hearings when that evidence has been suppressed in state criminal court. Petitioner does not cite to any specific case in support of this argument, but states that there are "1,000's" of cases which stand for this proposition. (Pet'r's Resp. 6, ECF No. 7). Additionally, Petitioner urges this Court to consult "any New York Parole Attorney." Id. at 5.

Petitioner's reliance on New York State law and his insistence that illegally obtained evidence may not be used in parole revocation hearings is misplaced.  New York courts which have addressed the judicially created rule proscribing the introduction of illegally seized evidence, or the "exclusionary rule," have noted that "[f]ederal and state courts are diametrically divided upon the issue of whether the exclusionary rule is available." People ex rel. Gueits v. Warden, George Motchan Detention Center, No. 251314-12, 2013 WL 387987 at *3, 2013 N.Y. Slip Op. 50124 (N.Y. Sup. Ct. Jan. 31, 2013).  Thus, although New York State law may apply the exclusionary rule in parole revocation hearings, Petitioner is in federal custody and the Revocation of Supervised Release Hearing which he challenges by way of this Petition was a federal proceeding guided by federal law.  It is well established that the federal exclusionary rule does not bar the introduction at parole revocation hearings of evidence seized in violation of parolees' Fourth Amendment rights. Pennsylvania Bd. of Probation and Parole v. Scott, 524 U.S. 357, 118 S.Ct. 2014 (1998).  The same rule applies to revocations of supervised release. See United States v. Maury, 530 F. App'x 205, 207 n.2 (3d Cir. 2013) ("We evaluate revocation of supervised release the way we once addressed revocation of parole."); United States v. Huff, 703

F.3d 609, 612 (3d Cir. 2013); United States v. Barnhart, 980 F.2d 219, 222 (3d Cir. 1992).

Accordingly, even assuming that the evidence in question was, in fact, obtained illegally, introduction of same at the Revocation of Supervised Release Hearing was proper.  Therefore, Petitioner is not entitled to § 2255 relief based on the District Court's consideration of the suppressed evidence and Grounds Two and Three of the Petition are denied.

B. Ground Four: Ineffective Assistance of Counsel

The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The right to counsel is "the right to effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added) (citations omitted), cited in Ross v. Varano, 712 F.3d 784, 797 (3d Cir. 2013).  This right exists at sentencing in both capital and non-capital cases. See Lafler v. Cooper, 132 S.Ct. 1376, 1385–86, 182 L.Ed.2d 398 (2012) (collecting cases).  "Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing can result in Strickland prejudice because 'any amount of [additional] jail time has Sixth Amendment significance.'" Id.

at 1386 (quoting Glover v. United States, 531 U.S. 198, 203, 121 S.Ct. 696, 148 L.Ed.2d 604 (2001) (alteration in original)).

To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must show both that his counsel's performance fell below an objective standard of reasonable professional assistance and that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  With respect to the "performance" prong, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  With respect to the "prejudice" prong, a "reasonable probability" of prejudice is "a probability sufficient to undermine confidence in the outcome." Strickland at 694.  Thus, counsel's errors must have been "so serious as to deprive the defendant of ... a trial whose result is reliable." Id. at 687. The performance and prejudice prongs of Strickland may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." Id. at 697.

Here, Petitioner argues that his counsel "failed to explicitly argue that the government failed to prove a new crime was committed[.]" (Pet. 8, ECF No. 1).  Petitioner then

clarifies in his Reply submission that his counsel "failed to research the law[,] . . . failed to investigate circumstances of Petitioner's [Violation of Supervised Release,] . . . [and was ineffective] for not researching and looking into th[e] suppression matter[.]" (Pet'r's Resp. 2, 4, 7, ECF No. 7). However, as explained above, there is no final order regarding suppression of evidence to which the sentencing court could have given preclusive effect. Additionally, federal law controlled the admissibility of evidence in Petitioner's Violation of Supervised Release Hearing. Thus, even if counsel had researched, investigated and argued in the manner desired by Petitioner, the evidence and statements from the New York State arrest still would have been considered at the federal Violation of Supervised Release Hearing and the same sentence would have been imposed. Accordingly, Petitioner cannot establish the "prejudice" prong of the Strickland standard and he is not entitled to relief.

### C. Ground One: Insufficient Evidence

In his first ground for relief, Petitioner challenges the sufficiency of the evidence used to revoke his supervised release. This argument, however, has already been raised and addressed on direct appeal. It is well settled in the Third Circuit that, in general, a petitioner cannot use 28 U.S.C. §

2255 to relitigate an issue already litigated on direct appeal. See Sonneberg v. United States, Civ. No. 01-2067, 2003 WL 1798982, at *2 (3d Cir. 2003) (movant "may not relitigate issues that were decided adversely to him on direct appeal by means of a Section 2255 petition"); United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993); U.S. v. Palumbo, 608 F.2d 529 (3d Cir. 1979); see also Curry v. U.S., Civ. No. 11-5800, 2015 WL 733274 (D.N.J. Feb. 20, 2015); Pinkston v. U.S., Civ. No. 08-5493, 2009 WL 792283 (D.N.J. Mar. 23, 2009); Nunez v. U.S., Civ. No. 07-1193, 2008 WL 2705016 (D.N.J. July 8, 2008).

Thus, absent certain circumstances, Petitioner is precluded from relitigating the sufficiency of the evidence. In Palumbo the Third Circuit held that four exceptions to this general rule are: "newly discovered evidence that could not reasonably have been presented at the original trial, a change in applicable law, incompetent prior representation by counsel, or other circumstances indicating that an accused did not receive full and fair consideration of his federal constitutional and statutory claims." Palumbo, 608 F.2d at 533 (citations omitted).

In this case, Petitioner admits that the argument raised in Ground One was addressed on direct appeal and he acknowledges that it can only be relitigated if one of the above-mentioned Palumbo exceptions applies. Petitioner asserts that the issue should be relitigated because he received "incompetent prior

representation by counsel," which is the fourth ground for relief raised in his Petition and addressed above.[2]  Thus, Petitioner can only succeed on Ground One if he succeeds on his Ineffective Assistance of Counsel claim.

As discussed above, Petitioner's Ineffective Assistance claim fails because he cannot establish that there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. Strickland, 466 U.S. 668.  Because Petitioner's Ineffective Assistance claim fails, he does not fall into one of the exceptions to the general rule against relitigation outlined in Palumbo, and he cannot use this 28 U.S.C. § 2255 Petition to relitigate an insufficient evidence argument which has already been addressed and denied on direct appeal. See Forney, 537 F. App'x 114.

## IV.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C.

---

[2] In his Response submission, Petitioner also mentions the "other circumstances" exception to the general rule against relitigation via a 2255 motion.  However, beyond this reference, Petitioner does not indicate how "other circumstances [existed] indicating that [he] did not receive full and fair consideration of his federal constitutional and statutory claims." Palumbo, 608 F.2d at 533 (internal citations omitted).  Therefore, Petitioner has failed to show that this exception should apply.

§ 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) (citation omitted), cited in U.S. v. Williams, 536 F. App'x 169, 171 (3d Cir. 2013).

Here, Petitioner has failed to make a substantial showing of the denial of a constitutional right. No certificate of appealability shall issue.

## V.   CONCLUSION

For the reasons set forth above, the Petition shall be denied. An appropriate Order follows.

                                        ___s/ Noel L. Hillman_____
                                        NOEL L. HILLMAN
                                        United States District Judge

Dated: April 21, 2015
At Camden, New Jersey